**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

DANIEL J. HERBISON, Individually and
as Representative of a Class of Persons
Within the State of New Mexico,

        Plaintiff,

v.                                            CV 09-0215 WPL/RHS

CHASE BANK USA, N.A., a Foreign
Corporation,

        Defendant.

**ORDER**

       Chase Bank made loans to certain credit card customers at advantageous fixed interest rates. To repay the loans, customers were required to make minimum monthly payments that were based on a percentage of the outstanding balance.  In November 2008, Chase notified its customers that, effective in January 2009, it would be changing the terms of the loans.  In particular, Chase advised that it would increase the minimum monthly payment amount and impose a $10 monthly fee for each loan account unless the customer agreed to an increase in the interest rate.

       Some Chase customers who were affected by the change in terms have sued Chase. According to Chase, there are twenty-eight suits pending in fifteen federal district courts arising from the change in terms.  (Doc. 15 at 3.)  In February, the plaintiffs in one of those suits filed a motion for transfer and coordination before the Judicial Panel on Multidistrict Litigation (MDL Panel).  (Doc. 16 Ex. 2.)

       Daniel J. Herbison, one of the affected customers, brought this suit in state court on behalf of himself and a class of New Mexico residents who are also subject to the change in terms.  After

Chase removed the suit to this Court, Herbison filed a motion for remand back to state court. Herbison requests expedited consideration of the motion so that it can be decided before any transfer of this case by the MDL Panel. Far from acquiescing to expedited consideration, Chase asserts that consideration of the motion, and all pretrial proceedings, should be stayed pending transfer by the MDL Panel.

Before me now are Herbison's motion to remand and Chase's motion to stay. For the reasons that follow, I will deny the motion to stay and grant the motion to remand.

MOTION TO STAY

The pendency of the motion to transfer before the MDL Panel "does not in any way limit the pretrial jurisdiction of" this Court. JPMDL Rule 1.5. Chief Judge Vázquez has applied a three-step approach for determining whether to rule on a motion to remand when a motion to stay is also pending. *See N.M. State Inv. Council v. Alexander*, 317 B.R. 440, 443 (D.N.M. 2004). The first step is a preliminary evaluation of the motion to remand. If the preliminary evaluation suggests that removal was improper, the evaluation should be completed promptly and the case should be remanded. *Id.* If the jurisdictional issues appear factually or legally difficult, the second step comes into play. The court should determine whether similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. Finally, if the jurisdictional issue is both difficult and similar to those in cases transferred or likely to be transferred, the court should stay the case. *Id.*

Following this approach, my preliminary evaluation of the motion to remand suggests that it has merit for the reasons discussed below. Therefore, I need not determine whether similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. I note, however, that although Chase asserts that a stay is appropriate to conserve

2

judicial resources, to ensure consistency, and to protect it from having to engage in duplicative motion practice and discovery, it does not claim that motions to remand involving similar issues are pending or likely to be filed in the related cases.  If similar issues will not be raised before the potential transferee court, judicial economy and consistency will not be advanced by delaying a ruling.  In any event, these interests are less substantial when a motion to remand is at stake.  *See Ill. Mun. Retirement Fund v. Citigroup, Inc.*, 391 F.3d 844, 851 (7th Cir. 2004) (holding that a court had authority to remand a case even though the remand was inconsistent with a potential transferee court's earlier jurisdictional ruling because "Congress has indicated a preference for remands based on . . . individualized jurisdictional evaluations and a tolerance for inconsistency").

Chase also cites prejudice and hardship to the parties as important factors to consider in deciding whether to grant a stay.  Other than duplicative motion practice and discovery, Chase has not identified any hardship that it will face.  Assuming there are no similar remand motions in the related cases and considering that the motion in this case has already been fully briefed by both sides and is meritorious, this hardship is not significant.  The potential prejudice to Herbison is more significant.  As another court has noted, when the MDL Panel transfers a case, the plaintiff may have little power to shape the course of the litigation, and the proceeding is all but certain to be far from the plaintiff's home. *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001).  (Here, the motion pending before the MDL Panel requests that all the cases be transferred to the Northern District of California, while Chase argues for the District of Delaware.  (Doc. 16 Ex. 2, 3.))  And delaying consideration of the remand motion would obviously delay the progress of this suit in state court.

For all of these reasons, I will deny the motion to stay and proceed to consider the motion to remand.

### MOTION TO REMAND

There is a presumption against removal jurisdiction, and removal statutes must be narrowly construed.  *Pritchett v. Office Depot, Inc.*, 420 F.3d 1090, 1094-95 (10th Cir. 2005); *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995).  Thus, doubtful cases must be resolved in favor of remand.  *Baby C v. Price*, 138 F. App'x 81, 83 (10th Cir. 2005); *accord Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008).  The removing party has the burden of demonstrating that removal is appropriate.  *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Baby C*, 138 F. App'x at 83.

Some cases indicate that the propriety of removal must be demonstrated in the complaint or the notice of removal.  *See, e.g., Eatinger v. BP Am. Prod. Co.*, 524 F. Supp. 2d 1342, 1345 (D. Kan. 2007) ("[A] removing party must meet its burden in the notice of removal itself, not a later document."); *see also Laughlin*, 50 F.3d at 873 ("The amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal.").  By statute, however, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."  28 U.S.C. § 1653.  This statute applies to notices of removal.  *See Buell v. Sears, Roebuck & Co.*, 321 F.2d 468, 471 (10th Cir. 1963).  It allows the removing party to "set forth in proper form something imperfectly stated in the original notice of removal," but it cannot be used to assert an entirely new basis for jurisdiction.  *Barrientos v. UT-Battelle, LLC*, 284 F. Supp. 2d 908, 912 (S.D. Ohio 2003).  Even if no motion to amend the notice of removal is filed, a court may deem the notice amended to incorporate later-filed affidavits.  *See Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

4

*Diversity Jurisdiction*

In its notice of removal, Chase first asserts that this Court has jurisdiction pursuant to the Class Action Fairness Act of 2005 (CAFA).  Among other things, CAFA amended 28 U.S.C. § 1332, which provides for federal jurisdiction based on diversity of citizenship.  Under CAFA, federal district courts have original jurisdiction over class actions when the aggregate amount in controversy exceeds $5,000,000 if any class member and any defendant are citizens of different states.  *See* 28 U.S.C. § 1332(d)(2)(A).  This provision does not apply if there are fewer than one-hundred class members.  *Id.* § 1332(d)(5)(B).

CAFA's legislative history indicates that its provisions should be construed broadly with a strong preference that interstate class actions be heard in federal court.  *See Morgan v. Gay*, 471 F.3d 469, 472 (3d Cir. 2006).  However, CAFA does not reverse the rules for demonstrating jurisdiction upon removal.  The removing party retains the burden of establishing jurisdiction.  *See Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009) (noting that seven other circuits have reached this conclusion).  *But see Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 680-81 (7th Cir. 2006) (holding that removing party bears burden of proving minimal diversity and the amount in controversy, but plaintiff bears burden of establishing exceptions to CAFA jurisdiction).

Herbison's complaint does not disclose or even estimate the number of class members; it merely states that "the number of persons in the State of New Mexico who accepted promotional offers from Chase is such that joinder of each of them individually is impractical." (Doc. 1, Compl. ¶ 33.)  The notice of removal does not assert that there are at least one-hundred class members.  Likewise, Chase's memorandum in opposition to remand does not discuss this requirement for CAFA jurisdiction.  For this reason alone, jurisdiction under CAFA has not been established.

Although I am aware that Chase is a major issuer of credit cards, this awareness cannot substitute for the absence of evidence—or even an allegation—that at least one-hundred people in New Mexico are subject to the change in terms.  As another court recently noted in discussing the numerosity requirement for a putative class action composed of a cellular telephone company's Florida employees:

> Yes, T-Mobile is a large company, with many retail outlets, and, as such, it might be tempting to assume that the number of retail sales associates the company employed in Florida during the relevant period can overcome the generally low hurdle presented by Rule 23(a)(1).  However, a plaintiff still bears the burden of establishing every element of Rule 23, . . . and a district court's factual findings must find support in the evidence before it.  In this case, the district court's inference of numerosity for a Florida-only class without the aid of a shred of Florida-only evidence was an exercise in sheer speculation.  Accordingly, the district court abused its discretion by finding the numerosity requirement to be satisfied . . . .

*Vega v. T-Mobile USA, Inc.*, ___ F.3d ___, ___, 2009 WL 910411, at *6 (11th Cir. April 7, 2009) (internal citation omitted).  Moreover, Chase should have been able to determine, or at least to estimate, the number of class members by examining its own records.  *See Amoche*, 556 F.3d at 52 ("[Defendant] was in a better position than plaintiffs to know who had purchased its policies and where they lived. Yet it provided the district court with virtually no information about the potential class size.").[1]

Chase has also failed to establish that over $5,000,000 is in controversy.  The Tenth Circuit has adopted the Seventh Circuit's approach for determining the amount in controversy when a case is removed based on diversity of citizenship and the complaint does not specify the amount of damages.  *See McPhail v. Deere & Co.*, 529 F.3d 947, 954-55 (10th Cir. 2008).  Quoting *Meridian*

---

[1] For example, O'Donnell's declaration (discussed below) states that the change in terms affected less than one-half of one percent of Chase's accounts and that approximately ten percent of the affected customers have California mailing addresses.  (Doc. 16 Ex. 7 ¶ 8.)

*Security Insurance Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006), the Tenth Circuit held that the "proponent of federal jurisdiction must, if material factual allegations are contested, prove those jurisdictional facts by a preponderance of the evidence." *McPhail*, 529 F.3d at 955.  In other words, the defendant must prove "jurisdictional *facts* that ma[k]e it *possible* that [the jurisdictional amount is] in play." *Id.*  "Only if it is 'legally certain' that the recovery (from plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." *Id.* (quoting *Meridian*, 441 F.3d at 543).

Herbison's complaint seeks declaratory and injunctive relief as well as an unspecified amount in actual and punitive damages, costs, and attorney's fees.  Chase's notice of removal asserts that Herbison "seeks monetary relief, on his own behalf and on behalf of a putative class of New Mexico residents, in excess of the sum of $5,000,000."   (Doc. 1, Notice of Removal ¶ 2c.)  Following this assertion, Chase recites some of the complaint's allegations as follows:

> Plaintiff alleges that a $10 monthly service charge ($120 annually) . . . has been assessed to his credit card accounts beginning in January 2009 unless he agrees to a higher APR on certain of his promotional balances of "as much as nearly three times or more the rate established by the promotional offer."  (Complaint ¶ 12(A).)  Plaintiff also challenges the "increased minimum monthly payment amount" on his accounts (Complaint ¶ 11); the "loss of benefit of the bargain" based upon "the amount financed, the length of repayment under the original terms, and the promotional rate fixed by the initial terms" which would "be expected to aggregate as much []as several hundred dollars or more over the original life of the account for each affected account" (Complaint ¶ 12(B)); with respect to "those persons who are unable to make the higher minimum monthly payments," "imposition of still higher 'default' or penalty rates of interest, which may reach 25%-30% per annum or higher (Complaint ¶ 13(A)); and "[i]ncreased damages suffered by persons who were forced into default by the alteration of terms imposed by Chase [that] would result from the difference between the 'default' rate imposed by Chase and the promotional rate to which the person was initially entitled, compounded over the extended repayment period which would be necessitated by the accelerated rate of interest imposed by Chase" (Complaint ¶ 14).

(Doc. 1, Notice of Removal ¶ 2d.)   The only other factual assertions in the notice of removal regarding the amount in controversy are as follows:

> In addition to damages in connection with the Service Charge, (Complaint ¶ 12(A)), Chase also will lose substantial revenues across the putative class if it is required to restore the minimum payment requirement to 2%, rather than 5%, of the ending balance on cardmembers' monthly account statements.  (Complaint ¶ 11.) Similarly, Chase would lose significant revenue if it is required to: provide the class "loss of benefit of the bargain" damages calculated as the difference between the promotional terms, as alleged by Plaintiff, and the terms following the change in account terms effective January 2009; and pay class members who default under the modified account terms the difference between their promotional rates and their default rates until each loan on each account is repaid.  (Complaint ¶¶ 12(B), 13, 14, 16.)

(*Id.* ¶ 2f.)

The notice of removal does not attempt to quantify the amount of money that the putative class stands to recover or the cost to Chase if the class action succeeds.  The notice contains several references to dollar amounts, percentages, and multipliers.  But without any estimate of the number of class members or information about their accounts, it is impossible to discern how much money is at stake here.  Chase does not even hazard a guess, and instead refers only vaguely to the potential loss of "substantial" or "significant" revenue.  Moreover, in its summary of the complaint's allegations, the notice of removal conspicuously omits the complaint's allegation that it would cost each class member more than "several thousand dollars apiece" to obtain an attorney and litigate their claims against Chase individually, and that these attorneys' fees would be "many times the actual damages which an individual plaintiff could expect to recover."  (Doc. 1, Compl. ¶ 20.)

In its memorandum in opposition to remand, Chase changes tack.  It argues that the requisite amount in controversy exists because of the "inherently nationwide scope of the allegations challenging Chase's conduct" since "[t]his action inextricably is part of the greater nationwide litigation to be coordinated before the MDL Panel."  (Doc. 15 at 15.)  Chase notes that the other

suits, like this one, are based on the $10 monthly service charge and the three percent increase in the minimum monthly payment.[2]

Chase offers no authority for the proposition that the amount in controversy includes the claims of persons who are not class members. The proposition is contrary to the plain language of the statute, which provides that "the claims of the individual class members" are to be aggregated in determining the amount in controversy. *See* 28 U.S.C. § 1332(d)(6). Therefore, I reject it.

Like the notice of removal, Chase's memorandum in opposition to remand provides no estimate of revenues that it will lose if this class action succeeds. The memorandum refers to a declaration by Thomas O'Donnell, Chase's general manager for its credit card business. The declaration was prepared in connection with Chase's response to a motion for temporary injunctive relief in a case pending in the Central District of California. (*See* Doc. 15 at 16 n.9 & Doc. 16 Ex. 7.) The declaration states:

> If the temporary restraining order sought by Plaintiffs is granted and remains in effect for even one month, Chase will lose revenue it would have realized from the Service Charge in excess of $2 million. I have calculated this figure by multiplying the number of cardmembers properly subject to [the service charge] by the amount of the $10 Service Charge over the period of one month. This does not take into account the reduced capital inflow if minimum payments must be reduced to their prior level.

(Doc. 16 Ex. 7 ¶ 13.) In the memorandum in opposition to remand, Chase asserts that Herbison's request for an injunction requiring Chase to limit the minimum monthly payment to two percent of the outstanding balance places $5,000,000 in controversy "several times over." (Doc. 15 at 16.) Chase states, "As detailed in the O'Donnell Declaration, the increase in minimum payments has led to a substantial in-flow in capital for Chase, which will be substantially reduced if the minimum

---

[2] In considering this argument, I will treat the memorandum as an attempt to amend the notice of removal and I will assume that the argument can properly be raised in an amended notice. *See supra*, at 4.

payments are returned to prior levels." (Doc. 15 at 16.) Contrary to this statement, O'Donnell's declaration does not detail a substantial in-flow in capital from the increased minimum monthly payments. Instead, O'Donnell acknowledged that his calculation of lost revenue "does not take into account the reduced capital inflow if minimum payments must be reduced to their prior level." Neither the declaration nor the memorandum contains any estimation of the revenues that would be lost from a reduction in the minimum monthly payments.

Chase has apparently abandoned any contention that lost revenues resulting from discontinuation of the $10 monthly service charge should be included within the amount in controversy. The memorandum in opposition to remand only argues that losses from the requested discontinuation of the increased minimum monthly payments would meet the amount in controversy. In a footnote, Chase reveals that after O'Donnell's declaration was filed in the Central District of California, it decided to stop assessing the monthly service charge and to credit the affected accounts for charges previously assessed plus any associated finance charge.[3]

In any event, O'Donnell's calculation of over $2,000,000 in lost revenues for a single month was apparently not limited to putative class members in this case. The declaration does not state how many of Chase's New Mexico customers were subject to the charge. Accordingly, the declaration does not establish the requisite amount in controversy for this case.

Chase also emphasizes, both in its notice of removal and in its opposition to remand, that Herbison seeks punitive damages. Punitive damages may be considered in determining the amount

---

[3] The amount in controversy is determined as of the date the notice of removal was filed. *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 406 (7th Cir. 2004); *Pfeiffer v. Hartford Fire Ins. Co.*, 929 F.2d 1484, 1488-89 (10th Cir. 1991). This case was removed on March 6, 2009. O'Donnell's declaration was signed on February 11, 2009. Chase states that it discontinued the monthly service charge after the declaration was filed. Thus, it is unclear whether the monthly service charge was controverted when the notice of removal was filed.

in controversy if they are authorized by state law for the plaintiff's cause of action. *See Woodmen of the World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003); *see also Frederico v. Home Depot*, 507 F.3d 188, 198-99 (3d Cir. 2007) (including punitive damages when calculating amount in controversy under CAFA).

Although Herbison's complaint is divided into five counts, it only asserts two causes of action: breach of contract and unfair trade practices. The first count is for breach of contract and the second count is for unfair trade practices. The remaining three counts deal with procedure and remedies. The fifth count contains the allegations required for a class action, the fourth seeks a temporary injunction, and the third seeks punitive damages. Specifically, the third count alleges that the plaintiffs "are entitled to an award of exemplary damages both by reason of the flagrant misconduct of Chase, as well as under the terms of the Unfair Trade Practices Act." (Doc. 1, Compl. ¶ 29.)

The New Mexico Unfair Practices Act (NMUPA) allows for treble damages, which have been described as a form of punitive damages, if the defendant acted willfully. *See* N.M. STAT. ANN. § 57-12-10(B); *Hale v. Basin Motor Co.*, 795 P.2d 1006, 1012 (N.M. 1990). In a class action, only the named plaintiff may recover treble damages. N.M. STAT. ANN. § 57-12-10(E); *Brooks v. Norwest Corp.*, 103 P.3d 39, 53 (N.M. Ct. App. 2004).

Treble damages are the only form of punitive damages available under the NMUPA. *See McLelland v. United Wisconsin Life Ins. Co.*, 980 P.2d 86, 90 (N.M. Ct. App. 1999). But if the plaintiff asserts another cause of action that allows for punitive damages, the plaintiff may recover the greater of treble damages under the NMUPA or compensatory plus punitive damages under the other cause of action. *See* N.M. STAT. ANN. § 57-12-10(D); *Woodmen of the World*, 342 F.3d at 1218; *Hale*, 795 P.2d at 1012. Punitive damages may be awarded for breach of contract if the

11

defendant acted with reckless disregard for the plaintiff's interests.  *Paiz v. State Farm Fire & Cas. Co.*, 880 P.2d 300, 307-08 (N.M. 1994).

In New Mexico, a plaintiff may recover punitive damages to the extent allowed by the United States Constitution.  The constitutionality of a punitive damages award is measured by three criteria: 1) the reprehensibility of the defendant's conduct, or the enormity and nature of the wrong; 2) the relationship between the harm suffered and the punitive damages award; and 3) the difference between the punitive damages award and the civil and criminal penalties authorized or imposed in comparable cases.  *Chavarria v. Fleetwood Retail Corp.*, 143 P.3d 717, 728 (N.M. 2006).  The second criterion focuses on the ratio between the compensatory and punitive damages awards.  *See id.* at 729.  The United States Supreme Court has stated that "few awards exceeding a single-digit ratio between punitive damages and compensatory damages, to a significant degree, will satisfy due process."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003).  However, a wider ratio may be appropriate if the defendant committed a particularly egregious act and the compensatory damage award is small.  *See, e.g., Chavarria*, 143 P.3d at 729.

Thus, Herbison may recover treble damages under the NMUPA or compensatory and punitive damages for breach of contract, whichever is greater.  The class members may recover only compensatory and punitive damages for breach of contract.  Any punitive damages award must comport with the criteria set forth in *Chavarria*.

Chase has made no effort to apply the rules discussed above to this case.  Nor has it made any other effort to quantify the amount of punitive damages that may be awarded.[4]  Instead, Chase

---

[4] One way it could have done this would have been to introduce evidence of punitive damages awards in analogous cases.  *See, e.g., Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1033 (N.D. Cal. 2002) (cited in Chase's notice of removal).

simply rests on the assertion that punitive damages "potentially could exceed $5 million, as [Herbison] has not limited the demand in his Complaint." (Doc. 15 at 16.) Based on the complaint's allegation that each plaintiff's damages would be "many times" less than "several thousand dollars," and without any approximation as to how many plaintiffs would be in the class, it is difficult to see how $5,000,000 could be reached even when punitive damages are included.[5]

Although Chase is not required to establish the amount in controversy to a mathematical certainty, it must do more than merely summarize the indefinite allegations in the complaint or rely on vague and generalized characterizations of damages, such as "substantial" or "significant." Chase's failure to be more precise is particularly noteworthy because it seemingly has information that would allow it to estimate the amount in controversy with some precision. In determining whether the $5,000,000 threshold has been crossed, a court may consider which party has better access to the relevant information. *See Amoche*, 556 F.3d at 51-52 ("In assessing whether [defendant] has carried its burden of showing a reasonable probability that the amount in controversy exceeds $5 million, we may consider what information reasonably within [defendant's] control it failed to present in addition to any affirmative evidence of the amount in controversy.") O'Donnell's declaration shows that Chase knows how many of its customers have been affected by its change in terms and that it can determine how many of those customers have addresses in a particular state. Providing this information regarding its New Mexico customers along with a representative or average balance for affected class members would have gone a long way towards

---

[5] The notice of removal mentions in passing that the complaint also seeks attorney's fees, but neither the notice nor the memorandum in opposition to remand attempts to show that the attorney's fee award could carry the total amount in controversy over the $5,000,000 threshold.

establishing the amount in controversy.  Although Chase undertook at least part of this analysis for

the case pending in the Central District of Calfornia, it inexplicably failed to do so in this case.

### Federal Question Jurisdiction

In addition to invoking CAFA's expansion of diversity jurisdiction, Chase asserts that

removal is appropriate because Herbison's complaint raises a federal question.  The Supreme Court

has described the jurisdictional framework governing removal of federal question cases as follows:

> Only state-court actions that originally could have been filed in federal court
> may be removed to federal court by the defendant. . . .  The presence or absence of
> federal-question jurisdiction is governed by the "well-pleaded complaint rule," which
> provides that federal jurisdiction exists only when a federal question is presented on
> the face of the plaintiff's properly pleaded complaint.  The rule makes the plaintiff
> the master of the claim; he or she may avoid federal jurisdiction by exclusive
> reliance on state law.

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal footnotes and citations omitted).

Chase contends that Herbison does not rely exclusively on state law.  Chase suggests that

the complaint asserts a federal cause of action because it invokes the Federal Trade Commission Act

(FTCA) and seeks a declaration that Chase's actions violate federal unfair trade practice law.  To

evaluate Chase's argument it is necessary to consider the context in which the complaint mentions

federal law.

The second count of the complaint begins with the heading "Unfair Trade Practices."  (Doc.

1, Compl. Count II.)  It then alleges that Chase's failure to provide services and credit in conformity

with the terms and conditions advertised to the public "is an unfair and deceptive trade practice."

(*Id.* ¶ 25.)  Next the complaint states, "Changes the terms [sic] of an existing credit account in the

manner adopted by Chase here have been previously found to be an unfair trade practice by various

federal agencies acting within the scope of the federal Fair Trade Commission Act, which findings

are adopted by reference by the New Mexico Unfair Trade Practices Act."  (*Id.* ¶ 26.)  The

14

complaint further alleges that the changes in the credit terms "are unconscionable and predatory lending practices."  (*Id.* ¶ 27.)  A prayer for relief follows these allegations.  Among other things, the complaint requests an order "finding and declaring the actions of Chase to comprise an unfair trade practice contrary to the federal and New Mexico unfair trade practice law."  (*Id.* ¶ 27A.)

Although it could have been drafted more clearly, the second count is best understood to assert only a claim under the NMUPA.

The first clue is the heading "Unfair Trade Practices."  Article 12 of Chapter 57 of the New Mexico Code is entitled "Unfair Trade Practices." The official short title of the article is "Unfair Practices Act," *see* N.M. STAT. ANN. § 57-12-1, but it is commonly known as the "Unfair Trade Practices Act," *Hale*, 795 P.2d at 1008.  Thus, the heading indicates that Herbison intended to invoke the NMUPA.

Second, as both parties acknowledge, the FTCA did not create a private right of action.  *See Am. Airlines v. Christensen*, 967 F.2d 410, 414 (10th Cir. 1992); *see also Floerscheim v. Engman*, 494 F.2d 949, 954 (D.C. Cir. 1973) ("No district court action for a declaratory judgment is authorized by the Federal Trade Commission Act.").  Accordingly, Herbison has no federal cause of action based on the FTCA, regardless of what the complaint says.  It would be odd to construe the second count to include a cause of action that everyone agrees does not exist.

Third, although there is no federal cause of action for unfair trade practices, the NMUPA expresses the legislature's intent that "the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts" in determining what constitutes an unfair, deceptive, or unconscionable trade practice.  N.M. STAT. ANN. § 57-12-4; *see also id.* § 57-12-3.  This is the apparent reason for the allegation that Chase's conduct has previously been "found to be an unfair trade practice by various federal agencies acting within the scope of the

15

federal Fair Trade Commission Act, which findings are adopted by reference by the New Mexico Unfair Trade Practices Act." (Doc. 1, Compl. ¶ 26.)

Read in isolation, the prayer for relief could be interpreted as a request for a declaratory judgment under the FTCA. But read in the context discussed above, it appears that the second count raises the FTCA only as a way of establishing liability under the NMUPA.

Chase argues that even if Herbison did not plead a federal cause of action, the second count raises a substantial issue of federal law, which provides an alternative basis for federal question jurisdiction. The Supreme Court has held that federal question jurisdiction applies to state law claims that implicate significant federal issues. *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). In this situation, "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314. The question is framed this way because "federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Id.* at 313.

Herbison's complaint does not necessarily raise a federal issue. If a complaint alleges several theories to support a claim, the claim does not necessarily raise a federal issue unless the federal issue is essential to every theory. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988); *see also Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006) (indicating that federal question jurisdiction existed over the state-created quiet title claim in *Grable* because a federal issue was "dispositive" and appeared to be the only issue contested in the case); *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004) ("A plaintiff's right to

16

relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue.").

Here, the second count asserts several theories by which Chase may have violated the NMUPA. For instance, it alleges that Chase engaged in an unfair and deceptive trade practice by failing to provide services and credit in conformity with the terms and conditions advertised to the public. This allegation appears to arise from N.M. STAT. ANN. § 57-12-2(D)(17), which provides that the "failure to deliver the quality or quantity of goods or services contracted for" may be an unfair or deceptive trade practice. *See Ashlock v. Sunwest Bank of Roswell, N.A.*, 753 P.2d 346, 348 (N.M. 1988) (holding that a bank failed to deliver the quality of services contracted for because it failed to provide an interest-bearing account as it had advertised), *overruled on other grounds by Gonzales v. Surgidev Corp.*, 899 P.2d 576 (1995).[6] The second count also alleges that Chase's change of terms is unconscionable. The NMUPA prohibits unconscionable trade practices. *See* N.M. STAT. ANN. § 57-12-2(E).

Because Chase could be found liable under the NMUPA even if Herbison fails to prove that its conduct violated the FTCA, the second count does not necessarily raise a federal issue. *See Rubin v. MasterCard Int'l, LLC*, 342 F. Supp. 2d 217, 219-20 (S.D.N.Y. 2004) (holding that claim under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) did not support federal question jurisdiction, even though FDUTPA required considerable weight to be to be accorded to federal interpretations of the FTCA).

---

[6] Indeed, Herbison states in his motion to remand that this allegation arises from section 57-12-2(D)(17). It would have been helpful if Herbison had been more explicit in the complaint itself. The complaint contains no statutory citations.

Furthermore, maintaining jurisdiction here would disturb the congressionally approved balance of federal and state judicial responsibilities. In this regard, it is important that there is no private, federal right of action under the FTCA. *See Grable*, 545 U.S. at 318. Nor does the FTCA preempt state remedies. *See* 15 U.S.C. § 57b(e). "[T]the combination of no federal cause of action and no preemption of state remedies . . . [is] an important clue to Congress's conception of the scope of jurisdiction . . . ." *Grable*, 545 U.S. at 318. It is also important to consider whether recognizing jurisdiction would "herald[] a potentially enormous shift of traditionally state cases into federal courts." *Id.* at 319. State unfair trade practices acts commonly incorporate the FTCA. *See* Christopher L. Peterson, *Federalism and Predatory Lending: Unmasking the Deregulatory Agenda*, 78 TEMP. L. REV. 1, 47-48 & nn. 325-26 (2005). Recognizing federal jurisdiction here could encourage "a horde of original filings and removal cases raising other state [unfair trade practices] claims with embedded federal issues." *Grable*, 545 U.S. at 318.

Chase also relies on the "artful pleading" doctrine. Under this doctrine, "a plaintiff may not defeat removal by failing to plead federal questions that are essential elements of the plaintiff's claim." *Schmeling v. NORDAM*, 97 F.3d 1336, 1339 (10th Cir. 1996). The doctrine has been likened to a "minefield" that should be entered only in limited circumstances. *See Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1041 (9th Cir. 2003) (cited by Chase).

It is unclear whether the artful pleading doctrine applies in the Tenth Circuit in the absence of complete preemption. *Compare Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060-61 (10th Cir. 2006) (discussing the doctrine in the context of complete preemption), *and Schmeling*, 97 F.3d at 1339 (same), *with Terrebonne Homecare, Inc. v. SMA Health Plan, Inc.*, 271 F.3d 186, 188 (5th Cir. 2001) ("The artful pleading doctrine does not apply . . . unless federal law completely preempts

the field.").  Chase expressly disclaims reliance on complete preemption as a basis for removal.[7]

Instead, Chase suggests that a federal question must be present in this case because it is present in the related cases pending before the MDL Panel.  In addition, Chase notes that another putative class action has been filed in this Court in which the plaintiff asserts violations of the federal Truth in Lending Act based on the same facts alleged in this case.  *See Williams v. Chase Bank USA, NA*, No. CV 09-0225 MV/RHS.  Chase seems to believe that because these suits raise federal causes of action, this suit must raise a federal cause of action too.  It is fundamental, however, that Herbison is the "master of [his] claim."  *Caterpillar*, 482 U.S. at 392; *see also Nicodemus v. Union Pac. Corp.*, 440 F.3d 1227, 1232 n.4 (10th Cir. 2006) ("There is one exception to the well-pleaded complaint rule: complete preemption.").  If he wants to forego federal remedies, that is his prerogative.

As explained above, an FTCA violation is not an essential element of Herbison's claim.  For this reason, and because Chase does not rely on complete preemption, the artful pleading doctrine does not apply.

### COSTS AND ATTORNEY'S FEES

Herbison seeks an award of costs and attorney's fees incurred as a result of Chase's improper removal.  *See* 28 U.S.C. § 1447(c).  "[A]bsent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal."  *Martin v.*

---

[7] Although one footnote in its memorandum in opposition to remand states that Chase did not "invoke complete preemption as a basis for removal," a later footnote argues that Herbison's NMUPA claim is not viable because it "is preempted by the complex federal regulatory scheme governing national banks."  (Doc. 15 at 11 n.7 & 14 n.8.)  I assume that the later footnote is referring to the "ordinary" preemption defense, which does not support federal jurisdiction.  *See Schmeling*, 97 F.3d at 1338-39 (explaining the difference between  complete preemption, which is a basis for federal jurisdiction, and ordinary preemption, which is not).

*Franklin Capital Corp.*, 546 U.S. 132, 136 (2005).  This standard recognizes "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied."  *Id.* at 140.

Although I have rejected all of Chase's arguments in favor of jurisdiction, Herbison's complaint could have been drafted more clearly.  The second count expressly requests a declaration that Chase's actions amount to an unfair trade practice under federal law.  As explained above, when this request is read in context it does not support federal jurisdiction.  But Herbison could have avoided any argument in favor of jurisdiction by omitting this unnecessary request and by making clear that he was relying only on the NMUPA.  The Supreme Court has indicated that Congress did not authorize an award of attorney fees for the purpose of discouraging removal "in all but obvious cases."  *Martin*, 546 U.S. at 140.  Accordingly, I will exercise my discretion to deny an award of attorney's fees.

CONCLUSION

Chase's motion to stay is denied.  With the exception of the request for costs and attorney's fees, Herbison's motion to remand is granted.  This matter is remanded to the Second Judicial District Court of New Mexico.

IT IS SO ORDERED.

William P. Lynch

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.                 20